# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHARI A. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-234-FHS-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Shari A. Harris requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record as a whole, and "[t]he substantiality of evidence must take into account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

**Claimant's Background**

The claimant was born on November 29, 1960, and was 43 years old at the most recent administrative hearing. She has a high school education and previously worked as a tire factory worker. The claimant alleges she has been disabled since March 11, 1996, because of degenerative disc disease of the lower back. She retained insured status through December 31, 2002.

**Procedural History**

On August 16, 1996, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ C. Wayne Falkenstein found that the claimant was not disabled on October 16, 1998, and the claimant appealed to the Appeals Council, which granted review and remanded the case to the ALJ for further development. ALJ Ralph Wampler again found the claimant was not disabled on October 27, 2000. The Appeals Council denied review, so the claimant appealed to this Court. On December 3, 2002, the Court granted the Commissioner's Motion to Remand for Further Administrative Proceedings. A supplemental hearing was conducted, and ALJ Michael Kirkpatrick found that the claimant was not disabled in a decision dated April 15, 2004. The Appeals Council denied review, so the

ALJ's decision represents the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, the claimant could lift no more than ten pounds, stand and/or walk no more than two hours in an eight-hour workday, and sit six hours in an eight-hour workday (Tr. 492). Although the claimant could not perform her past relevant work, the ALJ concluded that she was nevertheless not disabled under Medical-Vocational Rule 201.28 because she could perform a full range of sedentary work (Tr. 493).

## Review

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical evidence; and, (ii) by improperly analyzing her credibility. The undersigned Magistrate Judge finds that neither contention has merit.

The claimant first argues that the ALJ improperly evaluated the opinion of her treating physician Dr. J.T. O'Conner, D.O. The record reveals that the claimant began seeing Dr. O'Conner in August 1995. In September 1995 she underwent a lumbar laminectomy with disc excision, neural foraminotomy, and decompression performed by neurosurgeon Don F. Rhinehart, M.D. (Tr. 210-11). Following surgery, Dr. Rhinehart sent a letter to Dr. O'Conner in December 1995 indicating that the claimant had been released to a full work

load but should consider employment in a lighter capacity (Tr. 197). The claimant continued to see Dr. O'Conner and in October 1997 she complained of pain in the neck and down the right arm and pain in the low back and down the right leg (Tr. 443). In November 1997 her back pain continued (Tr. 442), and the claimant underwent an MRI. When compared to her MRI from August 1995, change was demonstrated at the level of L4-5 with epidural fibrosis (but no evidence of recurrent extrusion of disc) and at the level of L3-4 with minimal signal change on central portion of annulus which could represent very mild degree annulus rupture. The change, however, was present on the claimant's previous examination in 1995, with no evidence of any significant interval change (Tr. 293-94). The claimant was feeling somewhat better in December 1997, but still was assessed with low back pain (Tr. 441). In August 1998, Dr. O'Conner completed a form for social security with respect to the claimant's back impairment. He indicated that the claimant's X rays showed an abnormality or degeneration in the low back or cervical area. Dr. O'Conner noted he had diagnosed the claimant with a herniated nucleus pulposus and spinal stenosis from an MRI. He indicated she had suffered a limitation in motion of the spine and muscle spasms since he first examined her in August 1995. She also suffered numbness in the right thigh (Tr. 437-40). Although the claimant was not seen by Dr. O'Conner again until June 2000, the claimant continued to suffer from back pain and received treatment from another physician (Tr. 454-58).

    In July 2000, the claimant returned to Dr. O'Conner complaining that she had increased pain in her low back radiating into her right leg. The claimant had moved and had

seen another physician closer to her home. Dr. O'Conner noted the claimant's low back was tender and she had radiculopathy consistent with an L4-5, nerve root pain and assessed her with degenerative arthritis and degenerative disc disease (Tr. 577). He completed a medical source statement and found the claimant could lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk one hour total in an eight-hour workday and for 15-30 minutes continuously, and sit for a total of one hour total in an eight-hour workday and continuously for one hour. The claimant needed to lie down during the workday and had limited ability to push and/or pull, *e. g.*, she was unable to sweep or vacuum. She could frequently, handle, finger, feel, see, and speak; occasionally balance and reach; but never climb, stoop, kneel, crouch, and crawl. Because the claimant had problems with balance, she was unable to work at heights or with machinery. Dr. O'Conner indicated his findings with regard to the claimant's limitations were supported by her pain syndrome and her documented disc dessication in the lumbar area as evidenced on her 1997 MRI (Tr. 460-61). Further, he scheduled the claimant for an MRI on August 1, 2000, which revealed slight posterior bulging of the L4-5 disc in to the spinal canal, but it was considered a very minor change. No significant change was detected from the claimant's prior MRI in November 1997 (Tr. 574-76).

The ALJ specifically addressed the conclusions Dr. O'Conner expressed on the medical source statement and found they were not entitled to controlling weight. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that a medical opinion

from a treating physician is entitled to controlling weight "if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. The ALJ observed, for example, Dr. O'Conner's conclusions on the medical source statement were inconsistent with the opinions of Dr. Philip McCown, a medical expert who testified at the claimant's 1998 administrative hearing, Dr. Rhinehart's opinion, and a formal functional capacity assessment the claimant underwent in 1996. Although all of these were prior to Dr. O'Conner's assessment, the ALJ noted there was not significant change shown between the claimant's MRIs from 1995 to 2000 (Tr. 489-91). The ALJ also discussed the factors set forth in 20 C.F.R. § 404.1527 and determined that Dr. O'Conner's opinions were not entitled to "as much weight as the other evidence of record." (Tr. 489). *Id.* at 1119 ("Even if a treating physicians opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted].[2] In particular, the ALJ noted: (i) that Dr. Rhinehart was the

---

[2] The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].

claimant's treating neurosurgeon for her back and that Dr. O'Conner only provided treatment symptomatically for the claimant's low back pain; (ii) that the claimant had not seen Dr. O'Conner for several months before her June 2000 visit and that she was not examined by Dr. O'Conner at the visit; and, (iii) that Dr. O'Conner had knowledge of Dr. Rhinehart's opinion from December 1995 that the claimant could perform work at a lighter capacity when he assessed the claimant's limitations in June 2000. Thus, the ALJ clearly rejected Dr. O'Conner's opinions and provided reasons for doing so. *Watkins*, 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so."), *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. The undersigned Magistrate Judge therefore cannot say that his determination was clearly erroneous.[3]

The claimant also argues that the ALJ improperly analyzed her credibility, *i.e.*, the ALJ did not cite to specific evidence to support his credibility determination. Deference must be given to an ALJ's determination on claimant's credibility unless there is an

---

[3] Not all of the ALJ's reasons for rejecting Dr. O'Conner's opinions were good ones, however; for example, the ALJ determined that Dr. O'Conner based his conclusions in the medical source statement on the claimant's subjective complaints. *See, e. g., Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy.") [citations omitted]. Furthermore, contrary to the ALJ's findings, Dr. O'Conner's treatment notes from his June 2000 visit with the claimant included objective findings from an examination (Tr. 577).

indication that the ALJ misread the medical evidence when evaluated as a whole. *Casias,* 933 F.2d at 801. In assessing claimant's complaints of pain, an ALJ may disregard subjective complaints if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). However, credibility findings should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "[T]he evaluation must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4.

The claimant testified that she had her stomach stapled to help relieve her back pain and to help control her blood pressure (Tr. 623-24). The claimant continued to suffer from back pain with some radiation into her legs, muscle spasms, and neck pain (Tr. 64-65, 624-25). She testified that her back pain had remained about the same in the past three to four years, and she took over-the-counter pain medication for relief (Tr. 625). The claimant helped her daughter get to school, rested some in the mornings, and then did some light housework, *e. g.*, some dusting, light dishes, and laundry (Tr. 626). She had to lie down several times per day and had problems sleeping because of her pain (Tr. 627). The claimant testified she could stand in one generalized area for 15 to 20 minutes, could walk about one mile, sometimes having to break it up into ten-minute intervals, and lift from 10 to 15 pounds (Tr. 628).

The ALJ noted the relevant factors set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and cited evidence in support of his reasons for finding the claimant's subjective complaints not credible. He noted that the claimant received infrequent treatment and failed to return to Dr. Rhinehart when her pain became more severe even though he advised her to do so, and she failed to seek any other orthopedic or neurologic treatment. The ALJ also indicated that the claimant's tests showed only mild abnormalities. Although she had a brief period of time in 1997 that she rated her pain as an eight on a scale of ten, after therapy she rated her pain at a three. The ALJ discussed how the claimant was not taking any pain medication and indicated this to her physicians. He indicated that although the claimant had alleged she was significantly limited in her ability to stand and walk and with respect to her ability to sit, her physicians had recommended she engage in a walking program. The ALJ viewed the claimant's report of daily activities as performed on a voluntary basis and not because of any medical basis (Tr. 487, 491-92).

As the foregoing indicates, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and he provided specific reasons for the determination in accordance with *Hardman*. There is no indication that the ALJ misread the medical evidence as a whole, so his determination as to the claimant's credibility is entitled to deference. *See Casias,* 933 F.2d at 801. The undersigned Magistrate Judge therefore finds this contention is without merit.

## Conclusion

The Magistrate Judge FINDS that the decision of the Commissioner is supported by substantial evidence and that correct legal standards were applied, and therefore RECOMMENDS that the ruling of the Commissioner of Social Security Administration be AFFIRMED. Parties are herewith given ten (10) days from the date of this service to file with the Clerk of the Court any objections with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 15th day of August, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**